UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Erick T.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CASE NO. C19-232 BAT

**ORDER REVERSING THE COMMISSIONER AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff appeals the ALJ's decision finding him not disabled. He contends the ALJ misevaluated his testimony and the opinions of Sage Garber, LMHCA, Sylvia LaCourse, M.D., Melanie Mitchell, Psy.D, and Phyliss. Sanchez, Ph.D. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**DISCUSSION**

**A.**     **Plaintiff's Testimony**

Plaintiff contends the ALJ erroneously rejected his testimony he has difficulty standing or walking due to shortness of breath; his pain, chronic anxiety and fatigue impair his concentration and persistence; and that his "chronic diarrhea impacts his ability to remain in task." Dkt. 10 at 4. The ALJ found plaintiff's testimony about the severity of his diarrhea and fatigue was

inconsistent with the medical record showing plaintiff's HIV is asymptomatic. Tr. 33. Plaintiff argues the fact his HIV is asymptomatic is irrelevant because his HIV is unrelated to his diarrhea and fatigue, and thus not evidence that undermines his testimony. The Court cannot accept the argument. Whether diarrhea and shortness of breath are directly related to HIV does not alter the fact that the medical record diverges from plaintiff's testimony. As the ALJ correctly noted, the record shows plaintiff has had diarrhea and shortness of breath, but that it is not as severe as he claims. Plaintiff has not shown the ALJ inaccurately described the medical record, and the ALJ thus may reasonably rely on the discrepancy between the record and plaintiff's testimony. The Court notes in 2015 examining doctor Sylvia LaCourse, M.D., discussed plaintiff's HIV in performing a psychiatric evaluation. Dr. LaCourse did not specifically find in her evaluation that plaintiff could not work due to fatigue or diarrhea. Tr. 647-52. In 2017, Dr. LaCourse wrote a letter noting plaintiff's HIV, that blisters on his buttocks "limit his activities of daily living," and that plaintiff's mental health problems limit his ability to finish tasks, concentrate and persist. The doctor, however, made no mention of fatigue or diarrhea as conditions impairing plaintiff's ability to perform work. Tr. 1238. The Court accordingly concludes the ALJ did not err in rejecting plaintiff's testimony about diarrhea and fatigue.

The ALJ also rejected plaintiff's testimony about shortness of breath, as inconsistent with plaintiff's medical records. Tr. 33-34. Plaintiff contends the ALJ's reliance on normal EKG test results is erroneous because they are "not relevant to his allegations about shortness of breath." Dkt. 10 at 6. The argument overlooks the ALJ's finding that plaintiff's pulmonary functioning and physical test results indicated no significant respiratory deficits, Tr. 34, and that plaintiff testified "walking hills in Seattle is about as much exercise and I've been able to get." Tr. 97. Hence putting the EKG test results aside, there is medical evidence that is inconsistent with

plaintiff's claims of disabling shortness of breath. The Court accordingly affirms the ALJ's determination.

The ALJ rejected plaintiff's testimony that his mental impairments limited his social functioning. The ALJ found plaintiff presented in a pleasant and largely normal manner at his medical appointments, could hang out with other people at the hostel in which he lived, walked in the Gay Pride parade, tried to write a book, do photography and spend time with friends. Tr. 34-35. The ALJ erred. While plaintiff indicated he tends to isolate himself, he never claimed he could not socialize. Rather he testified he has been able to maintain friendships for decades, Tr. 94. He also told Melanie Mitchell, Psy.D. he enjoys counseling. Tr. 524. Hence the activities the ALJ noted above do not contradict plaintiff's mental limitations as to social contact. Additionally, the ALJ did not provide a clear and convincing explanation of how plaintiff's activities contradict plaintiff's PTSD symptoms. These symptoms as Dr. Mitchell noted, can affect plaintiff's ability to perform work because when triggered, and cause plaintiff to become fearful, avoidant, detached, among other things.

The ALJ further discounted plaintiff's testimony because he looked for work in 2014 and received unemployment benefits. Seeking employment is not necessarily a basis to discredit a claimant's testimony. *See Webb v. Barnhart*, 433 F.3d 683, 687–88 (9th Cir.2005) (reversing ALJ's determination that an impairment was not severe where the ALJ had relied in part on the claimant's seeking of employment). Additionally, the record shows plaintiff earned $669.56 in 2014. Tr. 393. This indicates a failed attempt to work rather than an ability to work that is inconsistent with plaintiff's testimony.

As to plaintiff's receipt of unemployment benefits, the ALJ acknowledges receipt of such benefits does not preclude disability but is a factor to consider. Tr. 35. The ALJ found that under

the Revised Code of Washington (RCW), a person receiving unemployment benefits must be willing and able to accept suitable work and be actively seeking work. Tr. 35. The ALJ reasoned that plaintiff therefore must have certified he was able to work to obtain unemployment benefits and that this certification undermines the testimony he gave about the severity of his symptoms.

The receipt of unemployment benefits undermines a claimant's testimony only where there is evidence of record that establishes the claimant held himself out as available for full-time work. *Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008); *see also Ipaye v. Colvin,* 2015 WL 3644005 at * 6 (C.D. Cal. June 10, 2015)( Here, although the record contains evidence that plaintiff received unemployment benefits after the alleged onset date, the record does not establish whether plaintiff claimed he was available for full-time or part-time work."); *Wood v. Colvin*, 2014 WL 4407719, at *9 (E.D. Wash. Sept.8, 2014) (Claimant's receipt of unemployment benefits was not clear and convincing reason for ALJ's adverse credibility determination where record contained no certification by claimant that he was physically and mentally able to work full-time).

Here, the record does not contain any documentation supporting the ALJ's finding. There are no certifications or other records indicating whether plaintiff held himself out as available for full time work or not. Substantial evidence therefore does not support the ALJ's finding.

**B.     Medical Evidence**

Plaintiff contends the ALJ misevaluated the opinions of Melanie Mitchell, Psy.D., Sylvia LaCourse, M.D., Phyllis Sanchez, Ph.D., and Sage Garber, LMHCA.  In cases filed before March 27, 2017, more weight should be given to the opinions of treating and examining doctors than to the opinions of doctors who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see* 20 C.F.R. § 404.1527(c)(2); SSR 96-2p. Here the ALJ favored the opinions

of non-examining psychologists examining doctors and other sources. The Court thus examines whether the opinions of Drs. LaCourse, Mitchell and Sanchez were rejected for specific and legitimate reasons that are supported by substantial evidence, *Lester*, 81 F.3d at 830; and whether the non-examining opinion of Dr. Petaja was discounted with reference to specific evidence in the medical record, *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). "The opinion of a nonexamining physician cannot *by itself* constitute substantial evidence that justifies the rejection of the opinion of . . . an examining physician . . . ." *Lester*, 81 F.3d at 830 (emphasis added).

The Court must also examine whether the ALJ gave germane reasons to reject the opinions of Ms. Garber, an other source. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

### *1.     Dr. Mitchell*

Dr. Mitchell evaluated plaintiff and opined he was markedly limited in his ability to understand and recall tasks followed by detailed instructions; perform activities within a schedule without special supervision; maintain appropriate behavior in the workplace; complete a normal workday and set realistic goals and plan independently. Tr. 526-27. The ALJ rejected these opinions because plaintiff was within normal limits for memory, concentration and thought; was cooperative despite agitation; Dr. Mitchell did not review other treatment records or provide a written explanation for the assessed limitations; and the opinions are inconsistent with plaintiff's activities and medical records. Tr. 36.

Substantial evidence does not support the ALJ's finding. This is not a case in which the doctor found a person markedly limited in several functional reasons for no apparent reason. Rather, Dr. Mitchell performed a clinical examination noting plaintiff suffered from trauma symptoms involving intense fear, helplessness, horror, intrusive thoughts, numbness, hypervigilance and exaggerated startle. Tr. 525. The doctor further noted defendant was

depressed, suffered from mania that included racing speech and mind and rapid changes, and that he had marked very dramatic personality traits. *Id.* The doctor observed that plaintiff appeared "highly anxious, almost hypomanic." Tr. 528. Dr. Mitchell noted on the mental status exam that plaint's memory and concentration were within normal limits buts also that his insight and judgment were not. *Id.* The doctor's observations and findings thus support her conclusion plaintiff suffers from significant mental health problems that limit his ability to meet work expectations in several areas. The Court accordingly finds the ALJ erred in finding Dr. Mitchell rendered an opinion that was inconsistent with her findings and which were unexplained.

The ALJ also erred in discounting Dr. Mitchell's opinion because she did not review all treatment records. *See e.g. Busby v. Berryhill*, 2019 WL 1332761 at * 14 (N.D. Cal., Mar. 25, 2019) ("ALJ's first reason for discounting Dr. Glantz's opinion — that Dr. Glantz 'did not have the opportunity to review the entire record' — is not legitimate.").

And finally, the ALJ erred in finding plaintiff's activities and the medical record contradict Dr. Mitchell's opinions. As noted above, the ALJ erred in rejecting plaintiff's testimony as inconsistent with his limitations. The ALJ's similarly erred in finding the activities contradict Dr. Mitchell's opinions. The ALJ also found "the limitations found by Dr. Mitchell are inconsistent with the medical records . . . discussed above." Tr. 36. The ALJ did not specify which records contradicted the doctor's opinions. The ALJ's reliance on "medical records" is unclear and conclusory, and therefore erroneous. *Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999)("[C]onclusory reasons will not justify an ALJ's rejection of a medical opinion.").

Although the ALJ did not specify, the Court has examined the ALJ's findings regarding how the "the medical record" does not corroborate plaintiff's testimony. Tr. 34. The Court

ORDER REVERSING THE COMMISSIONER AND REMANDING FOR
FURTHER PROCEEDINGS - 6

assumes these are the same records the ALJ found contradict Dr. Mitchell's opinions. Having reviewed the records, the Court concludes the ALJ erred. The ALJ found the medical record showed plaintiff presented with good hygiene, was cooperative, had good attention, concentration and memory. *Id.* Dr. Mitchell also found plaintiff had fair hygiene, good eye-contact, logical speech, was cooperative and pleasant and on mental status examination was within normal limits for thought, orientation, perception, remote memory and concentration. Tr. 527-28. The record and the doctor's opinions are not at odds.

Additionally, the ALJ's findings above provide only a partial picture of the contents of plaintiff's medical records. For instance the ALJ referenced medical records contained in "15F," but excluded the following notes: (1) Plaintiff was markedly impaired in community living, social withdrawal, response to stress, physical, health, and depressive and anxiety symptoms, Tr. 34; (2) "Plaintiff was exposed to trauma and reexperiences these events through recurrent, intrusive recollections and psychological reactivity," Tr. 735; (3) he has exaggerated startle response, angry outbursts and hypervigilance, *id*; and (4) "He discussed impairments and how that has always meant the demise of his ability to keep jobs." Tr. 747. Taken as a whole, there are numerous notations in the medical record that support rather than contradict Dr. Mitchell's opinions. Accordingly, the ALJ's finding the medical record contradicts Dr. Mitchell's opinions is not supported by substantial evidence.

### *2.     Dr. Sanchez*

Dr. Sanchez examined plaintiff in 2014 and 2015. The ALJ discounted the doctor's 2014 opinions on the grounds she provided "no explanation for the stated limitations. The ALJ noted the doctor observed plaintiff was sad and angry but "there was not much else by way of the observations and no testing was attached." Tr. 36. An ALJ may give less weight to a doctor's

opinion that is brief, conclusory, and inadequately supported by medical records, as is the case here. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The Court affirms the ALJ's determination.

In 2015, Dr. Sanchez evaluated plaintiff again and prepared a more detailed written evaluation. The ALJ rejected the opinions in this evaluation on the grounds that the marked limitations the doctor assessed are inconsistent with plaintiff's normal mental status examination scores, plaintiff's medical records and his activities. The ALJ erred. Dr. Sanchez found that plaintiff had mild or moderate functional limitations in nine of 13 work activities. The nine mild and moderate limitations largely track with plaintiff's mainly normal mental status examination results. The doctor assessed plaintiff with no more than moderate limitations in his ability to understand, persist in tasks after both simple and detailed instructions, learn new tasks, perform routine tasks, adapt to changes, make simple decisions, be aware of hazards and set goals and make plans. Tr. 639. These limitations track with plaintiff's mental status test results indicating he had mainly normal thought process, orientations, memory, fund of knowledge abstract thought and insight. Tr. 640.

The mental status exam results however do not directly touch upon other more severe limitations Dr. Sanchez assessed such as plaintiff's marked inability to complete a normal work day or maintain appropriate conduct in the workplace. Tr. 639. These limitations flow from the doctor's clinical examination in which she noted plaintiff suffered from depression, panic attacks, "stress vulnerability" and is "isolative." Tr. 638. The doctor noted that plaintiff has periods of depression in which he suffers from anxiety, isolation and flashbacks," and that he gets upset and wants to be alone and not communicate with anyone. *Id.* The ALJ did not address these findings and provided no explanation as to why they would not support the doctor's

opinions about plaintiff's limitations. The ALJ thus failed to provide specific and legitimate grounds to reject the doctor's opinions and accordingly erred.

The ALJ also rejected Dr. Sanchez's opinions as inconsistent with plaintiff's medical records and activities. The ALJ relied upon these grounds in rejecting Dr. Mitchell's opinions, and as discussed above erred in doing so.

### *3.     Dr. LaCourse*

In 2014, Dr. LaCourse completed a physical functional evaluation form in which she opined plaintiff was severely limited, i.e. unable to meet the demands of sedentary work. Tr. 649. The ALJ rejected the doctor's 2014 opinion on the grounds she did not include any basis for this assessment. Tr. 36-37. Substantial evidence supports this determination. From the face of the evaluation form, one cannot discern what if anything the doctor did during examination, and how the doctor arrived at the conclusion that plaintiff could not perform even sedentary work. The doctor for instance did not include any "chart notes detailing examination findings," and did not explain how she arrived at her conclusions. As noted above, the ALJ need not accept an opinion that is not supported and conclusory.

The ALJ also found Dr. LaCourse's notation that plaintiff's viral load was undetectable is inconsistent with her opinion he cannot perform even sedentary work. Plaintiff does not contend this finding is erroneous. Instead he argues the doctor's opinion is based upon plaintiff's recent hospitalization. Dkt. 10 at 15. This is an argument the Court declines to accept because Dr. LaCourse did not state plaintiff was limited based upon his hospitalization.

In 2015 and 2017, Dr. LaCourse submitted letters indicating plaintiff has HIV, recurrent painful blisters on his buttocks, PTSD and other mental health problems that limit his ability to complete tasks in a timely manner due to deficiencies in concentration and pace, and that

plaintiff met the requirements of being found disabled. Tr. 654, 1238. The ALJ rejected the opinions because the doctor failed to provide any basis for her conclusions or why plaintiff met the requirements of being found disabled. Tr. 37. The Court cannot say the ALJ's assessment is unreasonable. The doctor's letters are conclusory and the ALJ's determination is thus affirmed.

The Court notes and rejects plaintiff's contention the ALJ had an affirmative duty to recontact Dr. La Course to further develop what she was basing her opinions on. Dkt. 10 at 14-15. The ALJ's duty to develop the record is triggered only if the evidence is ambiguous evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). There is nothing ambiguous about Dr. LaCourse's opinion; she clearly opined plaintiff could not perform even sedentary work and met the requirements of being disabled. The deficiency with Dr. LaCourse's opinions is they are unsupported by any explanation, which as noted above, is a ground upon which the ALJ may validly rely in rejecting an opinion.

### *4.    Ms. Garber*

Ms. Garber, a mental health therapist, submitted a letter in January 2017 in which she opined plaintiff "psychological stress would result in frequent absences from work, perhaps as often as once a well, as difficulty with productivity." Tr. 730. She further indicated plaintiff "does not have the psychological resources necessary to support himself financially and thus Social Security benefits could provide a source of stability and support." Tr. 730. The ALJ rejected the opinion on the grounds the record does not support total disability, Ms. Garber incorrectly stated plaintiff was hospitalized five time, and the opinion is inconsistent with plaintiff's medical records. Tr. 37.

Plaintiff argues the ALJ erred because Ms. Garber did not opine plaintiff was totally disabled. Plaintiff is correct Ms. Garber did not use the words "totally disabled." However, it was

not unreasonable for the ALJ to find Ms. Garber's descriptions of plaintiff's functioning amounted to being totally disabled; Ms. Garber stated plaintiff's mental limitations would result in missing work once a week and productivity difficulties and he lacks the mental resources to support himself, i.e. work. It is not a stretch to say these limitations describe a person unable to perform gainful work. In any event, the ALJ's characterization of Ms. Garber's opinions is not a basis to affirm or reverse the ALJ. Rather the focus is on the two reasons the ALJ gave to reject the opinion.

First, the ALJ found Ms. Garber incorrectly stated plaintiff was hospitalized five times. An ALJ may reject a medical opinion when the ALJ reasonably finds that the doctor is unaware of the claimant's full diagnostic picture. *See* 20 C.F.R. § 404.1527(c)(6) (stating that the extent to which a doctor is familiar with the claimant's overall case record is a relevant factor in weighing the doctor's opinion); *Courtney v. Astrue*, No. C12-453-JCC-BAT, 2012 WL 6044659, at *5 (W.D. Wash. Nov. 5, 2012) (holding that "the ALJ's finding that [a doctor] was unaware of [the claimant's] full diagnostic picture, which included drug abuse, was a specific and legitimate reason to discount the doctor's opinions"). But the ALJ did not explain how or why Ms. Garber's misstatement undermined her opinions. Hence the fact Ms. Garber misstated the number of times plaintiff has been hospitalized, standing alone, is not a germane reason to reject her opinions.

Second, the ALJ rejected Ms. Garber's opinions as "inconsistent with the above cited treatment records." Tr. 37. But as explained above, the ALJ erred in rejecting Drs. Sanchez's and Mitchell's opinions on this basis. The ALJ accordingly similarly erred in rejecting Ms. Garber's opinions on this basis.

**CONCLUSION**

The Court accordingly **REVERSES** the Commissioner's final decision and **REMANDS** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reassess plaintiff's testimony regarding his mental limitations and the opinions of Ms. Garber, Dr. Sanchez and Dr. Mitchell; develop the record and redetermine plaintiff's RFC as needed and proceed to step five as appropriate.

DATED this 10th day of July, 2019.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge